UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 05268 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| COUNTRY CLUB HILLS SCHOOL DISTRICT 160, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tiffany Taylor worked as the Executive Secretary for Country Club Hills School District 160's Board of Education. In 2017, Taylor complained that Board members subjected her to abusive treatment. A year later, the District fired Taylor. She now brings a civil rights lawsuit, 42 U.S.C. § 1983, against several defendants: the District; the Board; the District's Human Resources Director, Tracy Lett-Foreman; the Board's President, Tamara Young; and individual Board members Margo Brown, Jacqueline Doss, Michael Humphrey, and Barbara Swain. R. 1, Compl.[1] Specifically, Taylor alleges that the Defendants violated her right to free speech under the First Amendment and her right to due process under the Fourteenth Amendment. The Defendants have moved to dismiss. R. 28, Defs.' Mot.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Dismiss. For the reasons set forth below, the Court grants the motion to dismiss, dismissing both claims, though without prejudice for now.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Taylor started working for the District as a School Secretary at Meadowview School in 2011. Compl. ¶ 13. A few years later, in 2014, she became the Executive Secretary to the Board. *Id.* According to Taylor, the Board members disrespected, intimidated, and harassed her on numerous occasions. *Id.*; *see also* R. 28-1, Defs.' Mot. Dismiss, Exh. A, 9/6/17 Letter at 1.[2] Jacqueline Doss verbally "attacked" Taylor; Barbara Swain belittled her; and Margo Brown insulted her appearance. *Id.* In September 2017, Taylor wrote a letter to Tracy Lett-Foreman, the District's Director of Human Resources, detailing these alleged abuses. Compl. ¶ 14; 9/6/17 Letter at 1. At the end of the letter, Taylor asked Lett-Foreman to place the letter in Taylor's personnel file and declared that she would file a formal complaint if the abusive behavior did not end. 9/6/17 Letter at 1-2.

---

[2] A district court can consider documents attached to a motion to dismiss as part of the pleadings "if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Here, the Defendants attached a copy of Taylor's September 6, 2017 letter to their motion. *See* Defs.' Mot. Dismiss, Exh. A, 9/6/17 Letter. Taylor does not contest the letter's authenticity, whether it is central to her First Amendment claim, or whether the Court can consider it as part of the pleadings. So the Court considers the letter without converting the dismissal motion into a summary judgment motion.

But the abuse continued. So, a few months later, in March 2018, Taylor wrote another letter, this time to Interim Superintendent Dr. Griff Powell, informing the Board that the abuses of its members made her working conditions unbearable and that she was resigning from her position, effective June 30, 2018. Compl. ¶ 16. Meanwhile, on April 10, 2018, Powell met with Taylor to discuss two emails that Taylor had sent to Board President Tamara Young. *Id.* ¶ 18. Powell said that Taylor had referred to Young with "a name that Powell deemed to be disrespectful." *Id.* Taylor apologized for the emails during their discussion. *Id.* After that discussion, Powell emailed Taylor with an instruction to stop using similar labels when addressing Board members. *Id.* Later that same day, Taylor also apologized to Young for the emails and explained that the offense was inadvertent. *Id.* ¶ 19.

Shortly after her conversation with Young, Taylor arrived at a Board meeting to take the meeting's minutes. Compl. ¶ 20. After a 2½-hour closed session, Taylor was asked to come into the meeting room. *Id.* Without any prior notice, Taylor was questioned by several Board members about the emails again. *Id.* Although Taylor tried to offer an explanation, the District's Business Manager, Kenya Austin, shouted at Taylor and then left the room. *Id.* Then Lett-Foreman (the Human Resources Director) began making faces behind Taylor's back, and Lett-Foreman was eventually asked to leave the room. *Id.* After Taylor finished apologizing to the Board, Taylor too left the room. *Id.*

Powell then came out of the room and told Taylor that Board President Young and Board Members Margo Brown, Jacqueline Doss, Michael Humphrey, and

3

Barbara Swain had voted to suspend her without pay until June 30, 2018. Compl. ¶ 21. Two days later, Powell told Taylor that her employment would not be "renewed" for the 2018-2019 schoolyear. *Id.* Before April 10, 2018 (the date that Powell confronted Taylor about the disrespectful emails), Taylor had not received any disciplinary write-ups, and all of her performance evaluations were overwhelmingly positive. *Id.* ¶ 17.

In this lawsuit, Taylor alleges that the Defendants violated her freedom of speech when they suspended her without pay for complaining about the Board members' abuse, and that the Defendants violated her procedural due process rights by failing to give her a fair and objective hearing. The Defendants have moved to dismiss the claims, Fed. R. Civ. P. 12(b)(6), and also seek dismissal of Lett-Foreman because she was not personally involved in the alleged violations. Defs.' Mot. to Dismiss.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original) (cleaned up).[3] The Seventh Circuit has explained that this rule "reflects a liberal notice

---

[3]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. First Amendment

"To establish a claim for retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). For a public employee's speech to be protected under the First Amendment, the employee must establish (1) that she spoke as a citizen; and (2) addressed a matter of public concern. *Id.*; *Kubiak v. City of Chicago*, 810 F.3d 476, 487 (7th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). Only the second element is at issue here. Whether speech is a

5

matter of public concern depends on its content, form, and context. *Kubiak*, 810 F.3d at 483 (quoting *Connick v. Meyers*, 461 U.S. 138, 147–48 (1983)). The relevant question is "whether the objective of the speech—as determined by content, form, and context—was to bring wrongdoing to light or to further some purely private interest." *Id.* "The determination of whether speech is constitutionally protected is a question of law." *Id.*

According to the Defendants, Taylor fails to adequately state a claim for First Amendment retaliation because her September 2017 letter was nothing more than a private airing of her grievances. The Court agrees. The content of Taylor's letter focused on *Taylor*'s working environment and specific interactions between her and members of the Board. For example, Taylor wrote about verbal "attacks" from Doss, belittling from Swain, and insults from Brown. *See* 9/6/17 Letter at 1. All of that alleged misconduct was directed at Taylor herself. Overall, the content of the letter focused on the Board's actions towards Taylor and the effect they had on her *personally*.

To resist this conclusion, Taylor points out that the letter accused the Board of abusing its powers against both her *and* others. R. 34, Pl.'s Resp. Br. at 6. But the letter contains only a single mention of abuse against "others," specifically: "In addition, I have witnessed this same behavior, as well as bullying, *towards others who work here*." 9/6/17 Letter at 1 (emphasis added). That is it. Otherwise, Taylor makes no reference to any abuse or bullying against anyone other than herself. *See id.* Taylor argues that this is because "she was best informed about the details of her

6

own situation," Pl.'s Resp. Br. at 6, but the fact of the matter is that without anything more than the single sentence (really, half a sentence) mentioning "others who work here," the content of the letter was focused on the Board's actions towards Taylor herself.

So much for content. The second consideration—the form of Taylor's speech—also weighs entirely in favor of concluding that she was not speaking on a matter of public concern. Taylor sent the letter directly to HR Director Lett-Foreman and specifically asked her to put the letter in Taylor's personnel file. 9/6/17 Letter at 1-2. That is the opposite of airing a concern in public. What's more, Taylor specifically distinguished the letter from a "formal complaint," ending the letter with a warning that she would have to file a formal complaint if the misconduct continued. *Id.* Those facts make this case 100% different from the case cited by Taylor, *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 567-568 (1968), which is the springhead of the public-concern speech case law. Yes, the plaintiff in *Pickering* was fired after writing a letter criticizing the school board that employed him, *Pickering*, 391 U.S. at 565-66, which sounds like Taylor's case. But there is a crucial difference: Pickering sent the letter to the editor of a local newspaper. *Id.* In sharp contrast, here Taylor used a letter to a personnel file as the avenue for her speech.

The third and final factor is the context of Taylor's speech. Here again, every accusation levelled by Taylor involves private interactions between her and the Defendants. *See* 9/6/17 Letter. In fact, Taylor even describes the Board's actions as

7

motivated by "*personal* vendettas." *Id*. (emphasis added). So the context of Taylor's letter also supports the conclusion that her speech was a matter of private concern, rather than public.

Thus, the current complaint fails to state a First Amendment claim and it is dismissed. Because this is Taylor's first complaint, the dismissal is without prejudice for now. If Taylor wishes to file an amended complaint, then the amended complaint must be filed by October 21, 2019, or else the dismissal will convert to a dismissal with prejudice.

### B. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue*, 873 F.3d at 969. The main issue here is whether Taylor sufficiently alleged that she had a cognizable property interest in keeping her job as the Executive Secretary to the Board. To demonstrate a cognizable property interest in her job, Taylor must be able to adequately allege that she had some legitimate expectation of continued employment at the District. *Covell v. Menkis*, 595 F.3d 673, 676 (7th Cir. 2010); *see also Forgue*, 873 F.3d at 970. For purposes of due process, that expectation "need not be codified in writing; a *de facto* unwritten or implied policy is sufficient to create an entitlement and protectable property interest." *Forgue*, 873. F.3d at 970 (citing *Perry v. Sindermann*, 408 U.S.

8

593, 601 (1972)); *see also Hermes v. Hein*, 742 F.2d 350, 354–55 (7th Cir. 1984) ("A property interest in promotion need not arise out of a contract or statute, but may be based on a *de facto* promotional program."). This type of "common law" property interest can be established through "unwritten mutually explicit understandings or legitimate and reasonable reliance on a promise." *Forgue*, 873 F.3d at 970 (cleaned up).

According to the Defendants, under Board Policy 5:270,[4] Taylor was an at-will employee, and thus had no property interest in continued employment. Defs.' Mot. Dismiss at 8 (citing *Rujawitz v. Martin*, 561 F.3d 685, 688-689 (7th Cir. 2009); *Krieg v. Seybold*, 481 F.3d 512, 520 (7th Cir. 2007)); *see also* Defs.' Mot. Dismiss, Exh. B, Board Policy 5:270 ("Unless otherwise specifically provided, District employment is at-will meaning that employment may be terminated by the District or employee at any time for any reason … ."). For her side of the story, Taylor contends that the parties had a mutually explicit understanding that she was an annual employee—an exception to Board Policy 5:270's employment at-will. Pl.'s Resp. Br. 7-8; Board Policy 5:270 ("Exceptions to employment-at-will may include employees who are employed annually . . ."). The fact that the Board stated that it would not "renew" her employment for the 2018-2019 school year, Taylor argues, implied that the Board considered her to be an annual employee. Pl.'s Resp. Br. at 7-8. In support of this argument, Taylor cites to *Quinn v. City of Chicago*, 646 F. Supp. 549, 551 (N.D. Ill.

---

[4]Taylor did not oppose the defense's reliance on the policy document as being outside of her complaint. Indeed, she relies on the policy document in arguing against the dismissal motion. *See* Pl.'s Resp. Br. at 8. So the Court will consider it.

9

1986). But the allegations in that case are not close to the ones here. The plaintiff there, a Chicago Police Department (CPD) investigator, alleged that CPD had a "custom and practice" whereby police department investigators could only be fired for cause, and only after notice and a pre-termination hearing. *Id.* Based on these allegations, the district court denied the defendants' motion to dismiss, reasoning that a property interest in continued employment may be "implied from the policies and practices of the governmental agency." *Id*. But no such implication is possible here. Taylor does not allege nor even suggest in the complaint that the District had any sort of "custom and practice" from which it is possible to infer an implied property interest. And the one reference to not "renew[ing]" Taylor's employment is not enough from which to plausibly infer a practice so well-established and so broad that a property interest was created.[5] The due process claim too must be dismissed, again without prejudice to filing an amended complaint by October 21, 2019.[6]

---

[5]In her response brief, Taylor alleges (for the first time) that all District employees—even at-will employees—received a written notice advising them of possible disciplinary action, the hearing date, and their right to representation. Pl.'s Resp. Br. at 8. And according to Taylor, those protections created a common law property interest. *See* Pl.'s Resp. Br. at 8 ("Therefore, Plaintiff's property interest stems from a mutually explicit understanding between [her] and the [District].") (cleaned up). But an employer can provide procedural disciplinary protections without creating a constitutionally protected property right. In any event, there is no need to definitively decide this issue, because the allegation is inconsistent with the original allegations in Taylor's complaint. So the Court cannot consider them when evaluating the sufficiency of Taylor's complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) ("[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss may be considered when evaluating the sufficiency of a complaint *so long as* they are consistent of the allegations in the complaint.") (emphasis added).

[6]It is worth noting that, if Taylor can sufficiently allege a protected property interest, then she did otherwise sufficiently allege a lack of due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). A public employee who has a constitutionally protected interest in her job is entitled to certain limited pre-termination procedures, including, at a minimum: "(1) oral or written notice of the charges;

**C. Lett-Foreman**

For the sake of completeness, the Court addresses the argument in the dismissal motion that is specific to Lett-Foreman (this way, if Taylor successfully amends her complaint, then the parties will know the fate of this argument). Lett-Foreman argues that the complaint contains no allegations to the effect that she was personally involved in the alleged misconduct. Defs.' Mot. Dismiss at 11-12. In order for a defendant to be liable in their individual capacity on a Section 1983 claim, "they must be personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (cleaned up). That means that if the defendant did not personally commit the misconduct, then she at least "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id*. (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th Cir. 1988)) (cleaned up). Here, Taylor's complaint sufficiently alleges that Lett-Foreman was personally involved. First of all, by virtue of her position as the Director of Human Resources, Lett-Foreman realistically can be expected to have known about or participated in Taylor's suspension. *See e.g. Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) (reversing dismissal of deliberate indifference claim against prison hospital administrator, reasoning that "his position … justifies the inference at this stage of the proceeding that he does bear some

---

(2) an explanation of the employer's evidence; and (3) and opportunity for the employee to tell his or her side of the story." *Head v. Chicago Sch. Reform Bd. of Trustees*, 225 F.3d 794, 803-04 (7th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). In the complaint, Taylor alleged that she received no advanced notice before the Board meeting. Compl. ¶ 20.

responsibility for the alleged misconduct"); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir.1999) ("defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions"). Second, Taylor also alleged that Lett-Foreman was the recipient of Taylor's letter complaining about the Board's abusive treatment, Compl. ¶ 14, and that Lett-Foreman participated in the Board meeting that led to Taylor's suspension, *id.* ¶ 20.

In response, Lett-Foreman argues that she did not vote on the Board's suspension decision, so there can be no personal liability against her. Defs.' Mot. Dismiss at 11-12. But a formal vote is not necessarily needed. At the pleading stage, when the Court must view the allegations in the light most favorable to Taylor, it is reasonable to infer that Lett-Foreman participated, at least to some extent, in the Board's decision to suspend Taylor, and that she knew about, facilitated, condoned, and turned a blind eye to the alleged constitutional violations. So if Taylor successfully amends her complaint to state valid First Amendment and Due Process claims, then Lett-Foreman can be properly named as a defendant with personal responsibility.

## IV. Conclusion

For the reasons explained above, Defendants' motion to dismiss is granted without prejudice to an amended complaint. Any amended complaint is due by October 21, 2019. The status hearing October 3, 2019 is reset to November 1, 2019, at 9:45 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 27, 2019