UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 05268 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| COUNTRY CLUB HILLS SCHOOL DISTRICT 160, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Tiffany Taylor worked as the Executive Secretary for Country Club Hills School District's Board of Education. During her tenure as Executive Secretary, Taylor had several tense interactions with Board members over the use of public funds by some of the Board members. In 2017, Taylor sent a letter to the District's Human Resources Director, complaining that several Board members had subjected her to abusive treatment. The District fired Taylor the following year. Taylor then brought this civil rights lawsuit, 42 U.S.C. § 1983, against several defendants: the District; the Board; the District's Human Resources Director, Tracy Lett-Foreman; the Board's President, Tamara Young; and individual Board members Margo Brown, Jacqueline Doss, Michael Humphrey, and Barbara Swain. R. 49, Am Compl.[1] The first version of the complaint was dismissed, though without prejudice. R. 48. All of these Defendants now move to dismiss the Amended Complaint. R. 52, Defs.' Mot.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Dismiss Am. Compl. For the reasons set forth below, the Court dismisses certain claim with prejudice and calls for supplemental briefing on one aspect of the First Amendment claims.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Taylor started working for the District as a School Secretary at Meadowview School in 2011. Am. Compl. ¶ 13. A few years later, in 2014, she became the Executive Secretary to the Board. *Id.* In that role, Taylor had several run-ins with certain Board members.

The first problem happened when Taylor attended a conference of the National Alliance of Black School Educators in 2015. Am. Compl. ¶ 14. Taylor, Board member Jacqueline Doss, and others attended a lunch together. *Id.* Taylor told the lunch server that they each would need separate checks. *Id.* Doss objected, insisting that Superintendent Sandra Thomas should pay for the entire meal. *Id.* Taylor pushed back, telling Doss that they each needed to pay for their own lunch from their individually allocated funds. *Id.*

Later, in the summer of 2016, former Board member Monique Thurman made Taylor aware of a conversation between Thurman and Doss in which Doss raised the possibility of removing Taylor from her job. Am. Compl. ¶ 15. Thurman told Taylor that Doss believed Taylor was "too involved in District affairs." *Id.* That was followed by another conflict in October 2016. At a public meeting, Doss asked Taylor—in front

2

of other people—about Taylor's salary, announcing that Doss wanted to determine how much the District would save if Taylor's position were eliminated. *Id.* ¶ 16.

After that run-in, during the next month (so late 2016), Doss e-mailed Taylor, asking to meet for lunch. Am. Compl. ¶ 17. Taylor was hesitant because of the previous tension between them and asked that Superintendent Thomas join. *Id.* Doss replied that if Thomas were to attend, then Thomas would have to pay for lunch. *Id.*

Fast forward a few months: in June 2017, Board President Tamara Young informed Taylor that Doss was upset that Taylor had raised concerns about how the Board members spent money. *Id.* ¶ 18. Taylor responded that she treated Board members politely, but nonetheless "that it was [Taylor's] job to monitor the Board's budget." *Id.*

A few months later, in September 2017, Taylor wrote a letter to Tracy Lett-Foreman, the District's Director of Human Resources. Am. Compl. ¶ 19. The letter asserted that multiple Board members were abusing their powers. *Id.*; *see also* Defs.' Mot. Dismiss Am. Compl. Exh A, 9/6/17 Letter at 1.[2] The letter also alleged that Taylor and other employees had suffered verbal abuse and bullying from Board members. Defs.' Mot. Dismiss Am. Compl., Exh. A. Separate from the letter, Taylor

---

[2]A district court can consider documents attached to a motion to dismiss as part of the pleadings "if they are referred to in the plaintiff's complaint and are central to [the] claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)). Here, the Defendants attached a copy of Taylor's September 6, 2017 letter to their motion. *See* Defs.' Mot. Dismiss Am. Compl., Exh. A, 9/6/17 Letter. Taylor does not dispute that the letter is authentic, that it is central to her First Amendment claim, and that the Court can consider it as part of the pleadings. So the Court considers the letter without converting the dismissal motion into a summary judgment motion.

3

asserts that Thomas, former Assistant Superintendent Tawanda Lawrence, and Interim Superintendent Griff Powell, along with two other Board members, were also aware of the "abuses." Am. Compl. ¶ 20.[3]

Twice in late 2017, Powell informed Taylor that the Board was considering removing Taylor from her position. Am. Compl. ¶¶ 21-23. When Taylor discussed her position with Human Resources Director Lett-Foreman, Lett-Foreman told Taylor that members of the Board felt that Taylor was "rude" and not "gracious" enough, and that Taylor was being "retaliatory" by remarking on how Board members spent public funds. *Id.* ¶ 24.

Taylor also alleges that Lett-Foreman owned a "District sweater" (presumably a sweater with a District logo or writing) like the other Board members did. *Id.* ¶ 25. Taylor alleges that, in January 2018, Lett-Foreman told the District bookkeeper that, if Board members asked about the sweater, Lett-Foreman would "tell the Board that [Taylor] ordered the sweater on her own, knowing that would be a lie." *Id.*[4]

---

[3]The Amended Complaint is ambiguous as to other Board members' awareness of the "abuses." Paragraph 19 discusses the September 6, 2017 letter, in which Taylor allegedly described how "multiple members of the Board were abusing their powers and had subjected her and other employees to abusive and bullying treatment." Am. Compl. ¶ 19. In the next paragraph, Taylor alleged that "in addition to Lett-Foreman, Thomas, former Assistant Superintendent Tawanda Lawrence, Interim Superintendent Dr. Griff E. Powell ("Powell") and two former Board members were aware of the abuses." *Id.* ¶ 20. Taking these two paragraphs together, it is not clear how the other Board members became aware of the "abuses." It is also not clear if they were aware of the alleged abuse of public funds *and* the abusive treatment of employees, or merely one type of "abuse."

[4]The nature of what is being alleged here is ambiguous. It is not clear, for example, whether the Amended Complaint is suggesting that Lett-Foreman planned to cover up her own misuse of Board funds by claiming that Taylor had purchased the sweater for her through proper channels, or, alternatively, that Lett-Foreman was intimating that Taylor herself had misused Board funds by purchasing Lett-Foreman's sweater. Either way, Taylor alleges that Lett-Foreman was planning to "lie" about something relating to use of public funds. Am. Compl. ¶ 25.

After these episodes, on March 22, 2018, Taylor submitted a letter of resignation, effective June 30, 2018. Am. Compl. ¶ 26. That, however, was not yet the end of the story. On April 10, 2018, still a couple of months before Taylor's designated departure, Powell spoke with Taylor about two emails that Taylor had sent to Board President Young. *Id.* ¶ 28. Powell had noticed that Young was referred to in the e-mail address section with a name that Powell deemed disrespectful. *Id.* Taylor explained that the reference was an inadvertent mistake resulting from her using her personal email account, and she offered to apologize. *Id.* Later that day, Taylor spoke with Young on the phone and apologized. *Id.* ¶ 29. She explained that she had felt mistreated by Young in the past when Young cancelled Taylor's arrangements to attend a professional development conference and took away her District phone and card. *Id.* Young appeared to accept the apology and made a comment suggesting that she was interested in moving past the conflict. *Id.*

Later that evening (still on April 10), Taylor arrived at a Board meeting to take minutes. Am. Compl. ¶ 30. In a closed session of the meeting, and with no prior notice, Taylor was questioned by several Board members about the emails. *Id.* As Taylor attempted to explain herself, Board member Kenya Austin shouted at her, and Lett-Foreman made disparaging faces behind her. *Id.* Taylor asked Lett-Foreman to leave the room. *Id.* After Taylor finished apologizing, the Board asked Taylor to leave the room. *Id.* After some time, Powell came out to tell Taylor that the Board had voted to suspend Taylor without pay. *Id.* Board members Brown, Doss, Humphrey, Swain, and Young all had voted to suspend her. *Id.* A few days later, Taylor received a letter

5

from Powell, dated April 12, 2018, explaining that Taylor's employment would not be "renewed" for the next school year. *Id.* ¶ 32.

Taylor filed this lawsuit. In the Amended Complaint, she alleges that the Defendants: (1) violated her freedom of speech by retaliating against her for speaking out against the Board members' misuse of public funds and about abusive behavior toward employees; and (2) violated her procedural due process rights by failing to give her a fair and objective hearing. After winning a motion to dismiss the original complaint, the Defendants have moved to dismiss the Amended Complaint, too. Fed. R. Civ. P. 12(b)(6); Defs.' Mot. Dismiss Am. Compl.

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alteration in original) (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)) (cleaned up).

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Consideration of Policy Manual

To begin, the parties dispute whether the evaluation of the dismissal motion can take into account excerpts from the District's employment-policy manual, which the Defendants attached as an exhibit to their motion to dismiss. *See* Defs.' Mot. Dismiss Am. Compl., Exh. B, 2/20/18 Policy Manual. Ordinarily, consideration of a motion to dismiss is cabined by the four corners of the targeted complaint. But a court may consider an exhibit at the dismissal-motion stage when the exhibit meets one of two requirements. First, if the complaint itself refers to the document and is central to the plaintiff's claims, then it is hardly fair to pretend that the document does not exist when deciding the dismissal motion. *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Second, if the exhibit is a matter of public record, then it might be permissible to consider the exhibit. *See Olson v. Champaign, Cty.*, 784 F.3d

1093, 1097 n.1 (7th Cir. 2015) ("As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6).")

Here, the Defendants argue that the Amended Complaint refers to employment policies in a way that is central to Taylor's claim. R. 56, Defs.' Reply Br. at 5. But Taylor contends that she "neither included, nor referenced, the document Defendants have attached to their Motion." R. 54, Pl.'s Resp. Br. at 12-13. That is true, but Taylor did directly refer to the District's policies, and indeed specifically referred to the Policy Manual: in support of the due-process claim, she alleged that the Defendants' actions were "in direct violation of the District's own *Policy Manual*." Am. Comp. at 8 ¶ 35 (emphasis added).[6] So the dismissal motion properly provides excerpts from that very same manual in responding to the due-process claim.

## B. Due Process

Moving on to the claims themselves, first up is the due-process claim. The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. City of Chicago*, 873 F.3d 962, 969 (7th Cir. 2017). At issue is whether Taylor sufficiently alleged a protectable property

---

[6]The Amended Complaint duplicated the numbering for Paragraphs 33 through 37. When citing the Amended Complaint at a paragraph number within this range, this opinion will also cite to the page containing the correct paragraph.

8

interest in her job as Executive Secretary to the Board. To survive a motion to dismiss, Taylor must adequately allege that she had a legitimate claim of *legal entitlement* in continuing her job. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Forgue*, 873 F.3d at 970.

The Defendants argue that Taylor was an at-will employee and thus had no protectable property interest in her position. Defs.' Mot. Dismiss Am. Compl. at 10 ("Board Policy 5:270 makes clear that education support employees like Plaintiff are at-will employees"). Because Taylor was employed in Illinois, we look to Illinois law to determine whether she had a property interest in her employment. Am. Comp. ¶¶ 4-6; *Moss v. Martin*, 473 F.3d 694, 699 (7th Cir. 2007). At-will employees generally lack a property interest in their continued employment. *See Rujawitz v. Martin*, 561 F.3d 685, 688-89 (7th Cir. 2009). Under Illinois law, to successfully plead a protected property interest, an at-will employee must "show a specific ordinance, state law, contract, or understanding limiting the ability of the state or state entity to discharge [her]." *Id* at 688 (*quoting Krecek v. Bd. of Police Comm'rs of La Grange Park*, 646 N.E.2d 1314, 1318-19 (1995).

Here, the allegations fall short of stating a protected property interest in Taylor's job. Indeed, the Amended Complaint does not allege that there is any state law, local ordinance, or contract that restricts the District's ability to terminate her employment. Taylor does assert, however, that she was "deprived of procedural due process when Defendants deprived her of a fair and objective hearing (to which she was entitled, based on a *mutually explicit understanding* between her and the

9

District).” Am. Comp. at 8 ¶ 35. (emphasis added). But the "understanding" that she refers to is an understanding that would allegedly entitle her to a *hearing*—not the *job*. This is a crucial distinction: "a rule that merely provides *procedures* to be followed does not include a substantive right if the procedures protect nothing more than employment that can be terminated at will." *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018) (emphasis added) (cleaned up). So the alleged entitlement to a hearing does nothing to satisfy the need to adequately allege entitlement in the *job*.

Even still, Taylor argues that she should not be required to "prove" a property interest at the motion to dismiss stage. Pl.'s Resp. Br. at 12. As far as it goes, that point is right: the pleading stage does not require "proof." But the complaint must at least allege *facts* to support the assertion of a protected property interest. If she was not an at-will employee, then she should have said so. For example, the Policy Manual states that the Superintendent was authorized to grant exceptions to at-will employment to certain non-licensed employees. *See* Defs.' Mot. Dismiss Am. Compl Exh. B, 2/20/18 Policy Manual at 2. ("The Superintendent is authorized to make exceptions to employing nonlicensed employees at-will but shall maintain a record of positions or employees who are not at-will."). Or, if the property-interest claim is premised on there being a mutually explicit understanding that Taylor was not an at-will employee, then Taylor herself—as one-half of that understanding—should have been able to allege the facts underlying that notion. But the Amended Complaint is silent on those types of facts. Instead, Taylor simply alleges a legal *conclusion*—

10

that she "had a protectable property interest in maintaining her employment"—without offering any *factual* allegations in support. Am. Comp. at 8 ¶ 33.

Lastly, Taylor recycles (from the response to the first dismissal motion) the argument that the Board's use of the word "renewed" in the April 2018 termination letter implied that she had a continued interest in her employment. *See* Am. Compl. at ¶ 32; *see also* Pl.'s Resp. Br. at 11. But as this Court explained in the prior opinion, the use of the word "renewed" by itself in a termination letter does not adequately allege a protected property interest. *See* R. 48, Order on Prior Mot. Dismiss at 4, 10. On this point, Taylor did not plead any new facts in the Amended Complaint. So, although Taylor of course need not *prove* a property interest at this stage, she must plead sufficient facts, and this she has failed to do. The due-process claim must be dismissed, and having been dismissed once already, this time the dismissal is with prejudice.[7]

### C. First Amendment

The remaining claims are brought under the First Amendment. Broadly stated, Taylor says she suffered retaliation for her complaints about two types of official misconduct: (1) abusive behavior by Board member against employees; and (2) the misuse of public funds by Board members. Taylor alleges that the Defendants fired her in retaliation for her speech about those problems. "To establish a claim for

---

[7]Because Taylor has not pled a protected property interest, the Court does not need to address whether she received adequate procedures. As the prior opinion explained, *if* Taylor had adequately pleaded a protected property interest, then the allegations on the lack of notice and process would probably have been enough to survive the dismissal motion. *See* Order on Prior Mot. Dismiss at 10 n.6.

11

retaliation in violation of the First Amendment, a public employee first must prove that her speech is constitutionally protected." *Forgue*, 873 F.3d at 966. For a public employee's speech to be protected under the First Amendment, the employee must adequately allege (1) that she spoke as a citizen; and (2) addressed a matter of public concern. *Id.*; *Kubiak v. City of Chicago*, 810 F.3d 476, 487 (7th Cir. 2016) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). The Court addresses each of the claims in turn.

### 1. Abusive Behavior

Although the Amended Complaint is primarily focused on allegations about the misuse of public funds, Taylor also alleges that she was retaliated against for complaining about the Board's abusive behavior toward employees. *See* Am. Compl. at 7 ¶¶ 33-37. In their motion to dismiss, the Defendants argue that Taylor's speech about the alleged abuse—which was conveyed in the September 2017 letter—was not a matter of public concern and thus not constitutionally protected. Mot. Dismiss at 5-7. Instead, the defense contends, the letter reflected Taylor's private complaint about her own grievances. *Id.*

The Court agrees: as explained in the prior opinion, the content and form of the September 2017 letter dictates the conclusion that it was only a private complaint. R. 48 at 6-8. The letter almost exclusively complained about Taylor's *personal* interactions with Board members. *See* Defs.' Mot. Dismiss Am. Compl., Exh. A, 9/6/17 Letter. As the Court previously explained, there is a single mention of abuse against "others," *id.* at 1, as part of one clause of one sentence, and with zero specifics.

12

Order on Prior Mot. Dismiss at 7. What's more, Taylor sent the letter to the HR Director and asked for the letter to be placed in Taylor's personnel file, saying only that she would have to file a formal complaint if the misconduct continued.[8] So the format of the speech—a letter to her own personnel file with no public airing of it—also weighs against deeming the letter to be a matter of public concern. Because Taylor offers no new facts in the Amended Complaint to alter the prior holding, R. 48 at 6-8, this aspect of the First Amendment claim is again dismissed. Given the prior dismissal and the unsuccessful attempt to fix it, this time the dismissal is with prejudice.

### 2. Public Funds

Turning to the other aspect of the First Amendment claim, Taylor alleges that she was retaliated against for voicing concerns about the misuse of public funds. The Defendants offer a number of reasons why Taylor's speech about the use of public funds is not protected. The defense argues, among other things, that Taylor was motivated by interpersonal conflict; she made no effort to communicate her concerns to the public; and the content, form, and context of Taylor's speech all point to a personal grievance. *See* Defs.' Mot. Dismiss at 7-8; *see also* Defs.' Reply Br. at 2.

To adequately allege that speech was constitutionally protected, a public employee (like Taylor) must allege that she (1) spoke as a citizen and (2) addressed a matter of public concern. *Garcetti*, 547 U.S. at 418. In this case, both parties recognize

---

[8] The copy of the letter attached as Exhibit A to Defendants' Motion to Dismiss is missing the second page where this language appeared, but a complete copy of the letter appears on the record as Exhibit A to Defendants' prior Motion to Dismiss. R. 28-1, Defs.' First Mot. Dismiss, Exh. A, 9/6/17 Letter at 1-2.

13

the applicability of that test. But both sides only addressed the second element: whether Taylor's complaints about the misuse of public funds are a matter of public concern. *See* Defs.' Mot. Dismiss at 4; *see also* Defs.' Reply Br. at 2-3; *see* Am. Compl. at 7 ¶ 33 ("Plaintiff's speech about Board members' improper spending of public funds … was speech of a private citizen on a matter of public concern.")

But what about the first element: was Taylor speaking as a member of the general citizenry or, instead, pursuant to her official duties? *Garcetti*, 547 U.S. at 418. The difference is crucial: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. In the Amended Complaint, Taylor alleges that "it was Plaintiff's *job* to monitor the Board's budget." Am. Compl. ¶ 18. (emphasis added). If it was indeed Taylor's job to monitor the budget—as she has alleged—then she was speaking pursuant to her official duties and thus has no First Amendment claim against her public employer. *Garcetti*, 547 U.S. at 421.

This fundamental issue must be addressed. It is true that courts are generally hesitant to raise certain issues on their own initiative. In *United States v. Sineneng-Smith*, the Supreme Court recently reaffirmed the "principle of party presentation." 140 S. Ct. 1575, 1579 (2020). "In both civil and criminal cases, in the first instance and on appeal …, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* at 1579 (cleaned up). The principle, however, is not "ironclad." *Id.* And raising *Garcetti*'s first element

14

in Taylor's case is a far cry from what happened in *Sineneng-Smith*. In that case, the Ninth Circuit on its own injected into the case—for the first time on appeal—a constitutional challenge to a criminal statue on the basis of overbreadth. *Id.* at 1578. The Ninth Circuit then invalidated the statute—across the board, as to all defendants—on overbreadth grounds. *Id.*

In contrast, here both sides have already acknowledged that *Garcetti* sets forth the governing standard for First Amendment protection of public-employee speech. Mot. Dismiss at 4; Am. Compl. at 7 ¶ 33 Also, this case is at the pleading stage, rather than on appeal after a 12-day jury trial, which was the procedural posture in *Sineneng-Smith*. *See Sineneng-Smith*, 140 S. Ct. at 1580. What's more, the legal issue at stake is confined to Taylor's case at the district-court level; at most, this Court's decision will bind the parties in Taylor's case and cannot possibly result in the invalidation of a federal statute. And it is important to raise the issue now, because resolving the issue now could avoid unnecessary discovery, summary judgment practice, and even a jury trial. The worst-case scenario would be to waste a jury's time and resolve this on a Rule 50 motion in the middle or at the end of a jury trial. Now is the time to address this element of *Garcetti*. "Judges… are not wallflowers or potted plants." *Tagatz v. Marquette University*, 861 F.2d 1040, 1045 (7th Cir. 1988).

For these reasons, the Court orders the parties to file Position Papers on the first element of *Garcetti*. The position papers are due simultaneously by August 28, 2020. For now, the misuse-of-funds aspect of the First Amendment claims remains under advisement.

15

## IV. Conclusion

The motion to dismiss is granted in part: the due-process claims are dismissed with prejudice, as is the aspect of the First Amendment claims premised on the complaints about abusive behavior. The Position Papers on the first element of *Garcetti* based on the alleged misuse of funds are due by August 28, 2020. The status hearing of August 14, 2020 is reset to September 11, 2020, at 8:30 a.m., but to track the case only (no appearance is required, the case will not be called).

ENTERED:

*Edmond E. Chang*
Honorable Edmond E. Chang
United States District Judge

DATE: August 12, 2020